UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ISABEL WILLIAMS, | Case No. 23-cv-06347-JST |
| Plaintiff, | **ORDER DENYING MOTION TO DISMISS, MOTION TO STRIKE, AND MOTION TO STAY** |
| v. | |
| AFFINITY INSURANCE SERVICES, INC., et al., | Re: ECF Nos. 27, 39, 40 |
| Defendants. | |

Before the Court are Defendants' motion to dismiss, ECF No. 27; Defendants' motion to strike, ECF No. 39; and Defendants' motion to stay discovery, ECF No. 40. The Court will deny the motions.

## I.    BACKGROUND

As part of her purchase of two cruise tickets from non-party Carnival Cruise Lines, Plaintiff purchased Defendants' "Vacation Protection" plan. ECF No. 1 ¶ (Complaint).[1] As presented at check-out, this plan consisted of "Travel Insurance" underwritten by Nationwide Mutual Insurance and two "non-insurance" components: "Trip Cancellation," and "24/7 Worldwide Travel Assistance." *Id.* ¶ 32. Some additional information about the plan was posted elsewhere on the Carnival website, including brief explanations of the three categories of protection. *Id.* ¶ 33. Defendants' offer was the only insurance option presented. *Id.* ¶ 51.

Plaintiff alleges that most, if not all, of these offerings in the Vacation Protection plan are not "assistance and other non-insurance services" but actually constitute insurance. *Id.* ¶¶ 6, 52.

---

[1] Defendant Nationwide Mutual Insurance Company ("Nationwide") underwrites travel insurance products and authorizes Affinity Insurance Services, Inc., and AIS Affinity Insurance Agency, Inc. to sell its travel insurance products to California consumers. *Id.* ¶16.

United States District Court
Northern District of California

Because insurance premiums must be approved by the California Department of Insurance (CDI), Plaintiff contends that charging additional fees for supposed non-insurance assistance services in the Vacation Protection bundle amounts to an unauthorized premium or an unlawful agent's fee. *Id.* ¶ 4.  To the extent that any of the services in the bundle do not qualify as insurance, Plaintiff contends that automatically bundling a fee for such "non-insurance" services without the option to purchase standalone insurance constitutes an unfair business practice.  *Id.* ¶ 7.

Plaintiff brings two causes of action in this putative class action.  First, Plaintiff alleges that Defendants violated Business and Professions Code § 17200, *et seq.* ("UCL") (Count One) due to their unlawful, unfair, and fraudulent trade practices.  Second, Plaintiff alleges that Defendants violated the False Advertising, Business and Professions Code § 17500, *et seq.* ("FAL")) (Count Two).

## II.      JURISDICTION

This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act, 28 U.S.C. Section 1332(d)(2)(A).

## III.     LEGAL STANDARD

### A.       Rule 12(b)(1)

A motion to dismiss under Rule 12(b)(1) tests the subject matter jurisdiction of the Court.  *See* Fed R. Civ. P. 12(b)(1).  If a plaintiff lacks Article III standing to bring a suit, the federal court lacks subject matter jurisdiction and the suit must be dismissed under Rule 12(b)(1).  *Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1174 (9th Cir. 2004).  "A Rule 12(b)(1) jurisdictional attack may be facial or factual.  In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction.  By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction."  *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) (citation omitted).  In resolving a facial attack, the court assumes that the allegations are true and draws all reasonable inferences in the plaintiff's favor.  *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004) (citations omitted).  A court addressing a facial attack must confine its inquiry to the allegations in the complaint.  *See Savage v. Glendale Union High Sch., Dist. No.*

United States District Court
Northern District of California

*205, Maricopa Cty.*, 343 F.3d 1036, 1051 (9th Cir. 2003).  Under Rule 12(b)(1), the moving party may submit affidavits or any other evidence properly before the court, and the court may consider these materials.  *Association of American Medical Colleges v. U.S.,* 217 F.3d 770, 778 (9th Cir. 2000) (internal citation removed); *see also Madanat v. First Data Corp.*, 2011 WL 208062 at *1 (N.D. Cal. Jan. 21, 2011).

### B.      Rule 12(b)(3)

Under Federal Rule of Civil Procedure 12(b)(3), a party may file a motion to dismiss on the basis of improper venue.  *Royal Hawaiian Orchards, L.P. v. Olson*, 2015 WL 3948821, at *1 (C.D. Cal. June 26, 2015) (citing Fed. R. Civ. P. 12(b)(3)).  "Once venue is challenged, the plaintiff bears the burden of showing that venue is proper."  *Underberg v. Emp'rs Mut. Cas. Co.*, 2016 WL 1466506, at *3 (D. Mont. Apr. 14, 2016) (citing *Piedmont Label Co. v. Sun Garden Packing Co.*, 598 F.2d 491, 496 (9th Cir. 1979)).  In considering a Rule 12(b)(3) motion to dismiss, the court need not accept the pleadings as true and may consider facts outside the pleadings.  *Doe 1 v. AOL LLC*, 552 F.3d 1077, 1081 (9th Cir. 2009).  "If the court finds that the case has been filed 'in the wrong division or district,' it must 'dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.'"  *Allstar Mktg. Grp., LLC v. Your Store Online, LLC*, 666 F. Supp. 2d 1109, 1126 (C.D. Cal. 2009) (quoting 28 U.S.C. § 1406(a)).  "Even if the court determines that venue is proper, it may still transfer for the convenience of parties and witnesses, in the interest of justice."  *Del Toro v. Atlas Logistics*, 2013 WL 796593, at *2 (E.D. Cal. Mar. 4, 2013).  "In either case, the decision to transfer rests in the discretion of the court."  *Id.* (citing 28 U.S.C. 1404(b); *King v. Russell*, 963 F.2d 1301, 1304 (9th Cir. 1992) (holding that the trial court did not abuse its discretion under 28 U.S.C. § 1406(a) when it chose to dismiss, and not transfer, the action because of improper venue)).

### C.      Rule 12(b)(6)

Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  A defendant may move to dismiss a complaint for failing to state a claim upon which relief can be

granted under Rule 12(b)(6).  "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).  To survive a Rule 12(b)(6) motion, a plaintiff need only plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible when a plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In reviewing the plausibility of a complaint, courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party."  *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  Nevertheless, courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)).

Rule 9(b) imposes a heightened pleading standard where fraud is an essential element of a claim.  *See* Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."); *see also Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1107 (9th Cir. 2003).  A plaintiff must identify "the who, what, when, where, and how" of the alleged conduct, so as to provide defendants with sufficient information to defend against the charge.  *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997).  However, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  Fed. R. Civ. P. Rule 9(b).

Even if the court determines that a 12(b)(6) motion should be granted, the "court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts."  *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (quotation omitted).

**D.     Rule 12(f)**

Under Rule 12(f) of the Federal Rules of Civil Procedure, the Court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."

United States District Court
Northern District of California

4

1    The function of a motion to strike pursuant to Rule 12(f) is "to avoid the expenditure of time and

2    money that must arise from litigating spurious issues by dispensing with those issues prior to

3    trial." *Whittlestone, Inc. v. Handi–Craft Co.,* 618 F.3d 970, 973 (9th Cir. 2010) (citation omitted).

4    "Generally, motions to strike are disfavored because pleadings are of limited importance in federal

5    practice and such motions are usually used as a delaying tactic." *Carranza v. Terminix Int'l Co.*

6    *Ltd. P'ship*, 529 F. Supp. 3d 1139, 1142 (S.D. Cal. 2021) (citation omitted).  "Thus, courts will

7    generally grant a motion to strike only when the moving party has proved that the matter to be

8    stricken could have no possible bearing on the subject matter of the litigation." *Id.* (citation

9    omitted).

10   **IV.     REQUESTS FOR JUDICIAL NOTICE**

11        Before turning to the parties' substantive arguments, the Court addresses the parties'

12   requests for judicial notice.  ECF No. 27-1 ("Defendants' RJN"); ECF No. 51-1 ("Plaintiffs'

13   RJN").  The Court may generally consider matters properly subject to judicial notice.  *See Tellabs,*

14   *Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).  In support of its motion,

15   Defendants request, among other items, that the Court take judicial notice of the Carnival Vacation

16   Protection plan California disclosures (Defendants' RJN, Ex. A); Carnival Cruise Line's Ticket

17   Contract (*Id.*, Ex. B) and the Regulatory Settlement Agreement between Nationwide and the

18   Insurance Commissioner (*Id.*, Ex. C).  Because these are publicly available documents that are not

19   subject to reasonable dispute, the Court grants the request.   Fed. R. Evid. 201; *Reyn's Pasta Bella,*

20   *LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006).

21        Because the Court does not consider the documents involved in Defendants' and Plaintiff's

22   other requests for judicial notice for the purposes of this motion, those requests are denied as

23   moot.

24   **V.     DISCUSSION**

25        **A.     Venue**

26        The Carnival Vacation Protection plan provides that "[t]he insurance regulatory agency

27   and courts of the jurisdiction in which You reside *shall have jurisdiction* over the individual or

28   group insurance coverage as if such coverage *or plan* were issued directly to You."  Defendants'

United States District Court
Northern District of California

RJN, Ex. A at 10.   Plaintiff contends that venue is proper in this district based on this clause because she resides in Oakland, California.

Defendants argue that Plaintiff's contract with non-party Carnival Cruises Lines—and that contract's forum selection clause—governs this dispute.  According to the Carnival Ticket Contract, a small claims court located in Miami-Dade County, Florida is the proper forum for this dispute.  ECF No. 52-1, Exs. 3, 4; *see also* Defendants' RJN Ex. B.

### 1.    Authenticity of the Carnival Contract

In their motion to dismiss, Defendants introduced Carnival's standard ticket contract as of the time of filing through a request for judicial notice.  Defendants' RJN, Ex B.  Plaintiff challenges the authenticity of that contract as filed, contending that Defendants failed to provide evidence that the terms in the contract were the actual terms to which Plaintiff agreed for her cruise reservations in 2022.  On reply, Defendants provided the Court with Plaintiff's ticket contracts as exhibits to the Declaration of Suzanne Brown Vazquez, the Senior Director of Guest Claims and Staff Counsel for Carnival Cruise Lines.  ECF No. 52-1; *Id.,* Exs. 3, 4.  The declaration also attaches documents to support the contention that Plaintiff signed the Carnival Ticket Contracts filed, including booking confirmation emails sent to Plaintiff after her purchase and Carnival records demonstrating that Plaintiff reviewed and agreed to the terms of the Ticket Contract prior to each of her cruises.  *Id.* ¶ 10; *Id.*, Exs. 1, 2, 7, 8.  The Court is satisfied that Defendants have met their burden to establish the terms of Plaintiff's contracts with Carnival.  *See Morgan Tire of Sacramento, Inc. v. Goodyear Tire & Rubber Co.*, 60 F. Supp. 3d 1109, 1113 (E.D. Cal. 2014) ("Defendants here bear the burden of demonstrating the existence of a contract and the inclusion of the forum selection clause in that contract.").

### 2.    Applicability of the Carnival Ticket Contract to Defendants

The Court now turns to the applicability of the Carnival Ticket Contract.  Defendants contend that the contract applies to intended third-party beneficiaries of the contract such as themselves.  The contract's third-party beneficiary clause provides as follows:

> (f) All rights, exemptions from liability, defenses and immunities of Carnival under this contract shall also inure to the benefit of Carnival's facilities, whether at sea or ashore, servants, agents,

1

> managers, affiliated or related companies, suppliers, shipbuilders and
> manufacturers of component parts and independent contractors,
> including, but not limited to, shore excursion or tour operators, ship's
> physician, ship's nurse, retail shop personnel, health and beauty staff,
> fitness staff, video diary staff, and other concessionaires, who shall
> have no liability to the Guest, either in contract or in tort, which is
> greater than or different from that of Carnival.

Defendants' RJN, Ex. C, Section 1(f).  Notably, the clause does not mention third-party insurers.

Defendants nevertheless argue that they qualify as third-party beneficiaries under this clause

because they qualify as either "affiliated or related companies" of Carnival, as Carnival's

"independent contractors," or as Carnival's "suppliers."[2]  The Court analyzes each contention in

turn.

<blockquote>

a.      "Affiliated or related companies" of Carnival
</blockquote>

Defendants contend that they qualify as an "affiliate" of Carnival because the term can

refer to a broad range of partnerships.  However, the clause describes "affiliated or related"

companies, not just "affiliated" companies.  In this context, "affiliated or related" clearly connotes

a corporate relation rather than a mere business partnership.  *See* Cambridge Dictionary, available

at https://dictionary.cambridge.org/us/dictionary/english/reside (last accessed May 23, 2024)

(related company is one "that controls or is controlled by another company, often one that is in the

same business group"); *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 955 (9th Cir. 2009)

(quoting Webster's Third New International Dictionary 35 (2002)) (An affiliate is "a company

effectively controlled by another or associated with others under common ownership or control");

*see also AIU Ins. Co. v. FMC Corp.*, 51 Cal. 3d 807, 822 (1995) (internal citations and quotations

removed) ("The clear and explicit meaning of these provisions, interpreted in their ordinary and

popular sense, unless used by the parties in a technical sense or a special meaning is given to them

by usage . . . controls judicial interpretation").  No such corporate relation is alleged here.  As

---

[2] The parties dispute whether this clause should be analyzed as a "Himalaya Clause," a standard provision in a bill of lading extending an ocean carrier's defenses and liability limitations to certain third parties.  The contract analysis remains the same regardless of this distinction.  *Good v. Nippon Yusen Kaisha*, 2013 WL 2664193, at *10 (E.D. Cal. June 12, 2013) (citing *Starrag v. Maersk, Inc.*, 486 F.3d 607, 616 (9th Cir. 2007) ("General contract principles are used to determine the coverage of a Himalaya clause because 'a bill of lading is a contract like any other.'")

1   such, Defendants do not qualify as "affiliated or related companies" of Carnival.

2              **b.        "Independent contractor" of Carnival**

3              Defendants next contend that they qualify as independent contractors because they

4   contracted with Carnival to provide insurance to Carnival customers.  *See* Complaint ¶ 29

5   ("Defendants contract with certain third-party retailers . . . such as Carnival . . .").  The Court

6   cannot square this interpretation with the plain terms of the contract.  As outlined above, Section

7   1(f) identifies independent contractors as "including, but not limited to, shore excursion or tour

8   operators, ship's physician, ship's nurse, retail shop personnel, health and beauty staff, fitness

9   staff, video diary staff, and other concessionaires."  Section 12 of the Carnival Ticket Contract,

10  titled "Independent Contractors, Shore Excursions, and Other Services" further clarifies the

11  bounds of the "independent contractor" category.  Defendants' RJN, Ex. C, Section 12.  Section

12  12(a) notes that all "shore excursions/tours . . . airline flights and ground transportation, as well as

13  the ship's physician, and on board concessions" are operated by independent contractors.  *Id.*

14  Section 12(b) specifies that ship personnel such as "spa employees, masseuses, barbers,

15  hairdressers, manicurists, fitness or golf instructors, videographers, art auctioneers, gift shop

16  personnel, shopping guides, wedding planners or other providers of personal services" also qualify

17  as independent contractors.  *Id.*  Notably, each enumerated example involves a worker providing a

18  service related to the physical cruise experience.  Third-party insurance, in contrast, involves a

19  contract of indemnification separate from the cruise experience.  Although the list does not purport

20  to be exhaustive, the contract does not contain a catchall term that conceivably captures such a

21  distinct service.  Nor is third-party insurance a minor, inconsequential product or service that

22  slipped through the cracks: if purchased, Defendants' insurance amounts to nearly ten percent of

23  the total cost of the cruise.  Complaint ¶ 31.  In a contract that splits hairs to mention that both

24  barbers and hairdressers qualify as independent contractors, it is unreasonable to suggest that the

25  parties neglected to mention an important, comparatively costly, and functionally distinct service

26  like third-party insurance.  *See Murphy v. DirecTV, Inc.*, 724 F.3d 1218, 1233–34 (9th Cir. 2013)

27  ("The California Supreme Court has observed that 'the rule of construction *expressio unius est*

28  *exclusio alterius*; *i.e.*, that mention of one matter implies the exclusion of all others' is 'an aid to

United States District Court
Northern District of California

resolve the ambiguities of a contract.'")

### c.  "Supplier" of Carnival

Finally, Defendants contend that they are a supplier of Carnival.  Although Defendants provide third-party insurance to consumers, they do not provide any services to Carnival itself. Accordingly, by the plain meaning of the term, Defendants are not "suppliers" of Carnival. Moreover, even if the Court construed Defendants to be "suppliers" of insurance for consumers on behalf of Carnival, a third-party insurer does not fit within the common understanding of a "supplier" in the cruise ship context.  Carnival provides physical, real-world experiences.  Its suppliers provide goods such as food and fuel, and its suppliers of services provide tangible services like ship maintenance.  Insurance services are non-tangible offerings unrelated to the cruise or the cruise experience, and do not fit into this category.  The Court cannot reasonably construe Defendants as "suppliers" under the terms of the contract.

### B.  Subject Matter Jurisdiction

#### 1.  Exclusive Jurisdiction

Defendants claim none of Plaintiff's claims can proceed in this Court because California law, specifically sections 1860.1 and 1860.2 of the California Insurance Code, confer exclusive original jurisdiction over insurance rate issues to the Insurance Commissioner.

Some background on the operative regulatory framework is appropriate.  The Insurance Code bars the Commissioner from approving rates that are "excessive, inadequate, unfairly discriminatory, or otherwise in violation of this chapter."  Cal. Ins. Code § 1861.05(a). Members of the public may challenge rates before and after approval in administrative proceedings.  *See* Cal. Ins. Code §§ 1858, 1858.6, 1861.05(c).  Once an insurance rate is approved, an insurer must charge the approved rates or face substantial penalties.  *See* Cal. Ins. Code §§ 1858.07(a), 1861.01(c).

Section 1860.1 of the Insurance Code further provides that "[n]o act done . . . pursuant to the authority conferred by this chapter shall constitute a violation of or grounds for prosecution of civil proceedings under any law of this State heretofore or hereafter enacted which does not specifically refer to insurance."  In apparent tension with this provision, Cal. Ins. Code

§ 1860.03(a) provides that "[t]he business of insurance shall be subject to the laws of California applicable to any other business, including, but not limited to . . . unfair business practices laws." "The weight of authority in this district and the California Court of Appeals harmonizes Sections 1860.1 and 1860.03(a) by narrowly construing the immunity under Section 1860.1." *Ellsworth v. U.S. Bank, N.A.*, 908 F. Supp. 2d 1063, 1082 (N.D. Cal. 2012) (internal citations removed).  As harmonized, "challenges to approved rates and rating factors are under the exclusive jurisdiction of the Insurance Commissioner (and thus not cognizable in court aside from the statutorily proscribed process), while challenges to the *application* of approved rates are not within that exclusive jurisdiction." *Day v. GEICO Cas. Co.*, 580 F. Supp. 3d 830, 837 (N.D. Cal. 2022) (internal citations and quotations removed).

Here, the parties do not dispute that CDI approved Defendants' insurance premiums. Instead, Plaintiff purports to challenge fees that exceed those approved insurance premiums. Specifically, Plaintiff alleges that most of the services and benefits Defendants call "non-insurance" or "assistance services" are part of the insurance contract and are subject to the approved rate.  By charging consumers fees on top of that approved rate without giving an option to pay only the approved premium, Defendants allegedly wrongfully applied the approved rates. The Court finds that Plaintiff's theory of bundling is plausibly distinct from the "setting" and "approval" of rates.  *See Boobuli's LLC v. State Farm Fire & Cas. Co.*, 562 F. Supp. 3d 469, 481 (N.D. Cal. 2021) (internal citation omitted) ("[d]amages based on State Farm's alleged misapplication of the approved rates during a specific time period (post-COVID) does not transform [plaintiff's] challenge into one about the premiums itself.  That may be a thin line in State Farm's view, but courts have repeatedly held that section 1860.1 must be 'narrowly constru[ed].'")  As such, sections 1860.1 and 1860.2 by themselves do not mandate exclusive jurisdiction here.

Defendants also cite a regulatory settlement agreement between CDI and Nationwide that permits Nationwide to "combin[e] and package[e] the cost of Assistance Services or Travel Cancellation Fee Waivers with the cost of Travel Insurance" provided that such a practice is "not prohibited by law in the Participating State" and that the Company "provide[s] all disclosures in

United States District Court
Northern District of California

connection with the sale of combined and packaged product that are required by Insurance Law in a Participating State." Defendants' RJN, Ex. C at 17–18. Although CDI's investigation and settlement relates to the core of Plaintiff's claims, the regulatory settlement agreement does not appear to provide or suggest that CDI maintains exclusive jurisdiction over Defendants' bundling practices. Moreover, the clause itself cites the applicability of state law requirements as applied to these bundling practices. Absent a clearer directive, the Court is not persuaded that CDI maintains exclusive jurisdiction over this dispute as a matter of law.

### 2.    Primary Jurisdiction

Defendants argue that even if CDI does not maintain exclusive jurisdiction, it nevertheless maintains primary jurisdiction over the dispute. The primary jurisdiction doctrine "allows courts to stay proceedings or to dismiss a complaint without prejudice pending the resolution of an issue within the special competence of an administrative agency" if the court "determines that an otherwise cognizable claim implicates technical and policy questions that should be addressed in the first instance by the agency with regulatory authority over the relevant industry." *Clark v. Time Warner Cable*, 523 F.3d 1110, 1114 (9th Cir. 2008). "Not every case that implicates the expertise of federal agencies warrants invocation of primary jurisdiction." *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 760 (9th Cir. 2015). "Rather, the doctrine is reserved for a 'limited set of circumstances that requires resolution of an issue of first impression, or of a particularly complicated issue that Congress has committed to a regulatory agency.'" *Id.* (quoting *Clark*, 523 F.3d at 1114). Application of this doctrine is disfavored "when the [relevant] agency is aware of but has expressed no interest in the subject matter of the litigation" or "when a referral to the agency would significantly postpone a ruling that a court is otherwise competent to make." *Robles v. Domino's Pizza, LLC*, 913 F.3d 898, 909–10 (9th Cir. 2019) (internal citations and quotations removed). The Court must also consider whether invoking primary jurisdiction would "needlessly delay the resolution of claims." *Id.* (citing *Reid v. Johnson & Johnson*, 780 F.3d 952, 967–68 (9th Cir. 2015)).

The Court is competent to adjudicate the dispute, *see, e.g.*, *Elgindy v. AGA Serv. Co.*, No. 20-CV-06304-JST, 2021 WL 1176535, at *11 (N.D. Cal. Mar. 29, 2021), and there is no indication

11

1    at this juncture that CDI intends to take action in this case.  As such, a stay or dismissal based on

2    this doctrine would represent a needless delay in adjudication.

3        **C.    Failure to State a Claim**

4            **1.    Compliance with Cal. Ins. Code § 1754**

5        Cal. Ins. Code § 1754 sets forth the conditions under which a travel insurance agent "may

6    authorize a travel retailer to transact travel insurance on behalf of and under its authority."

7    Defendants point to their compliance with the disclosure requirements in Section 1754 as

8    dispositive, arguing that the more specific requirements in this Section govern over more general

9    statutes mentioned in the Complaint.  Specifically, Defendants cite their compliance with the

10   following disclosure requirements:

11
12       • "[T]he agent's name, business address, email address, telephone number,
           license number, and the availability of the department's toll-free
13         consumer hotline[.]"  Cal. Ins. Code § 1754(a)(1).

14       • "This plan provides insurance coverage that only applies during the
           covered trip. You may have coverage from other sources that provides
15         you with similar benefits but may be subject to different restrictions
           depending upon your other coverages. You may wish to compare the
16         terms of this policy with your existing life, health, home, and automobile
           insurance policies. If you have any questions about your current coverage,
17         call your insurer or insurance agent or broker."  Cal. Ins. Code §
           1754(a)(7).

18       • "That purchasing travel insurance is not required in order to purchase any
           other product or service offered by the travel retailer."  Cal. Ins. Code §
19         1754(a)(8)(A).

20       • "If not individually licensed, that the travel retailer's employee is not
           qualified or authorized to: (i) Answer technical questions about the
21         benefits, exclusions, and conditions of any of the insurance offered by the
           travel retailer. (ii) Evaluate the adequacy of the prospective insured's
22         existing insurance coverage."  Cal. Ins. Code § 1754(a)(8)(B).

23   The basic disclosures here do not relate to the core allegations implicated in the Complaint: the

24   amount an insurer can charge consumers and how those amounts should be disclosed to

25   consumers.  In contrast, the Complaint provides a host of statutes relevant to the underlying act of

26   allegedly deceptive, unlawful, or unfair price bundling.  *See e.g.,* Cal. Ins. Code §§ 1861.01(c) and

27   1861.05 (insurance rates must be approved by the CDI prior to their use); Cal. Code Regs. tit. 10,

28   §§ 2189.3 and 2189.5 (prohibiting appointed agents from charging fees); Cal. Ins. Code § 381(f)

(requiring every insurance policy to include a "statement of the premium"); Cal. Code Regs. tit. 10, § 2360.0(c) (defining "premium" as "the final amount charged to an insured for insurance after applying all applicable rates, factors, modifiers, credits, debits, discounts, surcharges, fees charged by the insurer and all other items which change the amount the insurer charges to the insured"); Cal. Ins. Code § 332 (requiring disclosure of all facts material to the insurance contract); *see also* Complaint ¶¶ 26, 74 (referencing these laws); *Elgindy*, 2021 WL 1176535 at *10 (denying motion to dismiss and finding plaintiffs plausibly alleged that "the assistance services fee is an agent fee charged in violation of Cal. Code Regs., tit. 10, §§ 2189.3 and 2189.5, and/or an additional cost of the premium charged without approval by the Insurance Commissioner in violation of Cal. Ins. Code, §§ 1861.01(c) and 1861.05."). Compliance with the basic disclosure requirements contained in Section 1754 does not automatically excuse these other alleged statutory violations.

Defendants' authority to the contrary does not persuade. In *Adhav v. Midway Rent A Car, Inc.*, 37 Cal. App. 5th 954 (2019), plaintiffs alleged that a rental car company and its insurers violated the UCL and the Insurance Code by failing to disclose the amount of the insurance premium. *Id.* at 960–61. The court held that the Rental Car Agents Act, which required an insurer to file a copy of the policy issued to the rental car company with the Department of Insurance, controlled over the more general obligations of the Insurance Code, under which the insurer needed to provide the insured with a policy which states the premium. *Id.* at 971. The court reasoned that "[i]f Plaintiffs wanted a copy of the policy itself, including any information in the policy, it was available to them through the [Department of Insurance], as the Rental Car Agents Act specified." *Id.* at 972. Similarly, in *Vallarta v. United Airlines, Inc.*, 497 F.Supp.3d 790 (N.D. Cal. 2020), plaintiffs alleged the defendant airline failed to disclose that it received a portion of the travel insurance purchase price. Plaintiffs alleged that his behavior violated California Insurance Code § 1631, which prohibits soliciting contracts of insurance without a license in the State of California. *Id.* at 806–808. The court held that defendants' compliance with specific provisions of Cal. Ins. Code §§ 1754(b), which authorize a "travel retailer" like the defendant airline to "receive compensation" as part of the sale of that travel insurance, was dispositive in the dispute. *Id.* In both cases, specific statutory requirements controlled over more general

requirements.  Here, the basic disclosures required under Section 1754 do not directly apply to Plaintiff's allegations, and compliance with those basic requirements does not exclude the applicability of statutes more directly related to Defendants' conduct.

### 2.    Failure to Plead the Elements of the FAL and UCL Claims

Defendants also briefly raise an attack on the merits of the FAL and UCL claims.  Citing the disclosures included in the Complaint, Defendants argue that consumers could not have been deceived because they were informed that the price for the Vacation Protection plan included charges for non-insurance services.  As for the FAL claim, the Court finds that Plaintiff plausibly alleged that Defendants' limited disclosures were deceptive. *See Elgindy*, 2021 WL 1176535.  As for the UCL claim, the Court finds that Plaintiffs plausibly allege that the bundling comprised a wrongful application of the Insurance Commissioner's approved rate, and alternatively, that the fees in question were part of the insurance premium, required to be approved by the California Insurance Commissioner.

### D.    Motion to Strike

"[A] motion to strike class claims based only on the pleadings is proper only if the court is 'convinced that any questions of law are clear and not in dispute, and that under no set of circumstances could the claim or defense succeed.'" *Parducci v. Overland Sols., Inc.*, 399 F. Supp. 3d 969, 976 (N.D. Cal. 2019) (quoting *In re iPad Unlimited Data Plan Litig.*, 2012 WL 2428248, at *2 (N.D. Cal. June 26, 2012)).  Here, Defendants move to strike the class allegations on grounds that the Carnival Ticket Contract contained a waiver of such class actions.  Because the Court has ruled that the Carnival Ticket Contract does not apply to Defendants, the Court denies the motion.

### E.    Motion to Stay

Defendants moved to stay discovery pending a ruling on the motion to dismiss and motion to strike.  ECF No. 40.  Because the Court denies the motion to dismiss and motion to strike, the Court will also deny the motion to stay as moot.

/ / /

/ / /

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

## CONCLUSION

For the foregoing reasons, the Court denies the motions to dismiss (ECF No. 27), the motion to strike (ECF No. 39), and the motion stay (ECF No. 40).

**IT IS SO ORDERED.**

Dated:  June 24, 2024



_____
JON S. TIGAR
United States District Judge