**GUTRIDE SAFIER LLP**
Seth A. Safier (State Bar No. 197427)
   seth@gutridesafier.com
Marie A. McCrary (State Bar No. 262670)
   marie@gutridesafier.com
Rajiv V. Thairani (State Bar No. 344390)
   rajiv@gutridesafier.com
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 639-9090
Facsimile:  (415) 449-6469

Stephen M. Raab (*pro hac vice*)
   stephen@gutridesafier.com
Patrick J. Branson (*pro hac vice*)
   patrick@gutridesafier.com
305 Broadway, 7th Floor
New York, NY 10007
Telephone: (415) 639-9090
Facsimile: (415) 449-6469

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ISABEL WILLIAMS and JEFFREY PYTEL, on behalf of themselves, the general public, and those similarly situated, <br><br>     Plaintiffs, <br><br><br>        v. <br><br> AFFINITY INSURANCE SERVICES, INC., AIS AFFINITY INSURANCE AGENCY, INC., and NATIONWIDE MUTUAL INSURANCE COMPANY, <br><br>     Defendants. | CASE NO.  4:23-cv-06347-JST <br><br> **FIRST AMENDED CLASS ACTION COMPLAINT FOR UNFAIR BUSINESS PRACTICES AND FALSE ADVERTISING** <br><br> JURY TRIAL DEMANDED |

-1-

1

**<u>INTRODUCTION</u>**

2      1.      Plaintiffs Isabel Williams and Jeffrey Pytel, by and through their undersigned

3  counsel, bring this class action against Defendants Affinity Insurance Services, Inc., AIS Affinity

4  Insurance Agency, Inc. (together, "Aon Affinity" or "Aon") and Nationwide Mutual Insurance

5  Company ("Nationwide") (collectively, "Defendants") to seek redress for Defendants' unlawful

6  and unfair online marketing and sale of insurance policies for prices exceeding the insurance rates

7  that they were specifically authorized to charge for their insurance policies.

8      2.      Defendants market and offer travel insurance (covering expenses associated with

9  trip cancellation, trip interruption, lost baggage, and other travel perils) to consumers through

10  various websites, including, but not limited to, Carnival Cruise Line ("Carnival") and Norwegian

11  Cruise Line ("Norwegian"). Under California law (including under California Insurance Code

12  Sections 1753 and 1754), these retailers are Defendants' agents for purposes of transactions

13  concerning the travel insurance. Accordingly, the conduct of the retailers in such matters is

14  attributable to Defendants as their own conduct.

15      3.      In California, insurers cannot legally charge more than the pre-approved insurance

16  premium rate for their policies. In 1988, California voters enacted Proposition 103 (a series of

17  laws substantially reducing and strictly regulating insurance rates) to protect consumers from

18  "excessive, unjustified and arbitrary" insurance charges and "to ensure that insurance is fair,

19  available, and affordable for all Californians." Insurance premiums must be approved by the

20  California Department of Insurance ("CDI") and agents may not charge mandatory fees on top of

21  the approved premium. California Insurance Code Section 1754 further provides that Defendants,

22  or their retailer-agents, must disclose to a "prospective insured" (that is, prior to purchase) that

23  "purchasing travel insurance is not required in order to purchase any other product or service

24  offered by the travel retailer." This disclosure requirement further confirms that requiring

25  consumers to pay for both travel insurance and other services, as a bundle, is prohibited and

26  contrary to California law and public policy.

27      4.      In violation of these laws, and contrary to the clear public policies behind them,

28  Defendants are deliberately making insurance transactions less affordable and more arbitrary by

automatically bundling so-called "non-insurance" fees, including a so-called "assistance fee," in the single price charged to consumers for Defendants' travel insurance. Although their travel insurance offers are presented for a price that appears to be the insurance premium, Defendants secretly and unfairly charge unsuspecting consumers additional fees, on top of the calculated premium, without adequately disclosing that they are charging those fees and without giving consumers an option to pay only the approved premium for the travel insurance according to the filed and approved rate for that insurance.

5.      Defendants purport to justify their illegal prices by contending that their retailer-agents bundle Defendants' insurance with certain "assistance services" and/or other "non-insurance" benefits, and that those supposedly "non-insurance" benefits are unregulated and thus they (or their retailer-agents) can charge whatever they want for them. These bundled products of travel insurance (underwritten by Nationwide) and so-called "non-insurance" benefits (including "assistance services" and/or cancellation fee waivers) are, collectively, the "Products."

6.      Most, if not all, of the services and benefits Defendants call "non-insurance" or "assistance services" are, in fact, part of the insurance contract and are subject to the approved rate, and Defendants are not allowed to charge extra for them.

7.      Even if any of the assistance services and benefits Defendants call "non-insurance" could be accurately characterized as unrelated to insurance (if they were sold separately), it would still be illegal and unfair for Defendants and their agents to automatically bundle a fee for such "non-insurance" services into the total plan price and require everyone to pay that fee to get the insurance that is offered.

8.      Consumers are not afforded any opportunity to decline these assistance services, or the associated charge, in the offer or purchase process, nor is any information disclosed to consumers on assistance pricing distinguished from insurance pricing.

9.      Defendants' practices are contrary to California's public policy of ensuring consumers get actuarially based rates for insurance, and they deprive consumers of the benefits of that regulation. If an insurer can just add any amount it chooses on top of an approved rate, it

undermines the purpose of rate regulation and the efforts of the CDI in reviewing and approving specific rates.

10.    Moreover, the financial injury to consumers of being charged an additional fee, on top of the insurance premium, supposedly (but not really) for a service they do not use, are not aware of, and which is priced far above its actual value, outweighs any potential benefit of requiring consumers to pay such an arbitrary fee—particularly when Defendants could easily make their assistance services optional.

11.    Defendants' practice of charging an additional fee for a supposed non-insurance assistance service is substantially a sham and a pretext to collect illegal fees at the expense of millions of consumers.

12.    Plaintiffs bring this action on behalf of themselves, the general public, and a class of similarly situated individuals, seeking a judgment against Defendants that would, among other things: (1) prohibit Defendants from charging mandatory and/or undisclosed fees (in addition to premiums) for "assistance" and other services in connection with the insurance purchases; (2) require Defendants to plainly and truthfully disclose all premiums, fees, and charges to consumers prior to their online purchase of insurance; (3) require Defendants to properly distinguish between insurance and non-insurance services and make any non-insurance services optional; and (4) require Defendants to pay Plaintiffs and class members restitution.

**PARTIES**

13.    Isabel Williams is, and at all times alleged herein was, an individual and a resident of Oakland, California. Plaintiff Williams intends to remain in California and makes her permanent home there.

14.    Jeffrey Pytel is, and at all times alleged herein was, an individual and resident of San Clemente, California. Plaintiff Pytel intends to remain in California and makes his permanent home there.

15.    Defendant Affinity Insurance Services, Inc. (d/b/a Aon Affinity Insurance Services, Inc. and referred to in this Complaint, along with its affiliate AIS Affinity Insurance Agency, Inc. as "Aon Affinity" or "Aon") is a Pennsylvania corporation headquartered in Fort Washington,

PA. Affinity Insurance Services, Inc. maintains its principal place of business at 1100 Virginia Drive, Suite 250, Fort Washington, PA 19034. It, along with its affiliate AIS Affinity Insurance Agency, Inc., is a subsidiary of Aon plc. Affinity Insurance Services, Inc. is one of two licensed insurance agents for sale of the Products in California. (The other is AIS Affinity Insurance Agency, Inc., which is also named as a defendant in this Complaint.) Affinity Insurance Services, Inc. markets and sells insurance policies and assistance services, inclusive of the Products, to the public. Affinity Insurance Services, Inc. has substantial contacts with and receives substantial benefits and income from California and throughout the United States.

16.    Defendant AIS Affinity Insurance Agency, Inc. (d/b/a Aon Direct Insurance Administrators and referred to in this Complaint, along with its affiliate Affinity Insurance Services, Inc., as "Aon Affinity" or "Aon") is a California corporation with principal addresses at 200 E. Randolph Street, Chicago, IL, 60601 and 707 Wilshire Boulevard, Suite 2600, Los Angeles, CA, 90017. AIS Affinity Insurance Agency, Inc. is one of two licensed insurance agents for sale of the Products in California. (The other is Affinity Insurance Services, Inc., which is also named as a defendant in this Complaint.) AIS Affinity Insurance Agency, Inc. markets and sells insurance policies and assistance services, inclusive of the Products, to the public. Like its affiliate, AIS Affinity Insurance Agency, Inc. markets its travel insurance Products and ensures that its shared name and/or logo are prominently included on Product documents and on webpages providing information about the Products. AIS Affinity Insurance Agency, Inc. has substantial contacts with, and receives substantial benefits and income from, California and throughout the United States.

17.    Defendant Nationwide Mutual Insurance Company ("Nationwide") is an Ohio corporation headquartered in Columbus, OH. Nationwide maintains its principal place of business at One West Nationwide Blvd., Columbus, OH 43215. Nationwide underwrites travel insurance products and authorizes Aon to sell its travel insurance products to California consumers. Nationwide, directly and through its agents, Aon Affinity, has substantial contacts with and receives substantial benefits and income from California and throughout the United States.

18. Aon Affinity (including both affiliates Affinity Insurance Services, Inc. and AIS Affinity Insurance Agency, Inc.) and Nationwide are referred to collectively herein as "Defendants."

19. With respect to the allegations herein, Aon Affinity acted as the agent of Nationwide, and, in doing the things herein alleged, was acting within the scope and course of its authority as such agent.

20. With respect to the allegations herein: (a) the acts and omissions of each Defendant concurred and contributed to the various acts and omissions of the other Defendants in proximately causing the injuries and damages as herein alleged; (b) each Defendant aided and abetted the acts and omissions of the other Defendants in proximately causing the damages, and other injuries, as herein alleged; (c) each Defendant ratified each and every act or omission complained of herein; and (d) Defendants were each a member of, and engaged in, a joint venture, partnership and common enterprise, and acting within the course and scope of, and in pursuance of, said joint venture, partnership and common enterprise.

21. Each Defendant is jointly and/or vicariously liable for each other Defendant's wrongful conduct alleged herein.

## JURISDICTION AND VENUE

22. This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act, 28 U.S.C. Section 1332(d)(2)(A) because: (i) there are 100 or more class members, (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs; and (iii) at least one plaintiff and at least one defendant are citizens of different states.

23. This Court has supplemental jurisdiction over any state law claims pursuant to 28 U.S.C. Section 1367.

24. The injuries, damages, and/or harm upon which this action is based, occurred or arose out of activities engaged in by Defendants within, affecting, and emanating from, the State of California. Defendants regularly conduct and/or solicit business in, engage in other persistent courses of conduct in, and/or derive substantial revenue from services provided to persons in the

State of California. Defendants have engaged, and continue to engage, in substantial and continuous business practices in the State of California. Defendants' wrongful acts and omissions occurred in California.

25.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in the state of California, including within this District.

26.    Plaintiffs accordingly allege that jurisdiction and venue are proper in this Court.

## DETAILED SUBSTANTIVE ALLEGATIONS

27.    Insurance is a highly regulated service in every state. California requires insurers and their agents to obtain approval for insurance rates prior to offering those policies and rates to consumers, and to clearly identify the approved insurance premium to consumers. *See* Cal. Ins. Code § 1861.01(c) ("insurance rates subject to this chapter must be approved by the commissioner prior to their use"), § 1861.05 ("No rate shall be approved or remain in effect which is excessive, inadequate, unfairly discriminatory or otherwise in violation of this chapter."); *see also* Cal. Ins. Code § 381 (providing an insurance policy must specify a statement of the premium). There are also strict requirements if an insurance producer (who may be an agent, broker, or broker-agent) wishes to charge a fee for its services. Only brokers may charge a broker's fee, and only after required disclosures are made. *See* Cal. Code Regs. tit. 10, §§ 2189.3 and 2189.5 (authorizing only brokers, not agents, to collect fees, and only pursuant to strict disclosure requirements). Accordingly, insurance producers must identify any fees they charge separately from the premium in sufficient detail for consumers to understand the fees and for there to be a determination that the fees are in compliance with the insurance laws and regulations.

28.    Reasonable consumers expect that insurers and their agents comply with all laws and regulations, that insurance premiums will be clearly identified prior to purchase, and that any separate or additional fee, whether to compensate an agent or for a "non-insurance" service or benefit, will also be clearly identified prior to any agreement to pay for such fee. Reasonable

consumers who are quoted a single price for insurance reasonably assume that price is a lawful and approved premium and not a vehicle for hidden fees added to the insurance premium.

29.     Defendants market and sell the Products at issue, which include both insurance benefits and services and supposedly additional "non-insurance" services and benefits. Defendants are responsible for charging and collecting the premiums and fees at issue and are responsible for ensuring that the amounts they charge consumers are lawful, fair, and not deceptive. Defendants purport to provide a supposed "assistance service" for which they deceptively, unfairly, and unlawfully charge consumers. These additional "non-insurance" services are deceptive, unfair, and unlawful to the extent they offer no additional value to the consumer. Defendants have been unjustly enriched by those unlawful, unfair, and undisclosed fees.

## I.    Defendants Charge Unsuspecting Consumers for Supposed "Non-Insurance" Assistance Services in Conjunction with Travel Insurance

30.     When purchasing cruises, airfare, hotel reservations, and similar travel fares or accommodations from online websites or mobile apps, consumers are often presented with the option to insure their purchase. Defendants contract with certain third-party retailers who offer online bookings and travel arrangements for their specific travel services (such as Carnival and Norwegian) to present consumers with an offer to purchase Defendants' insurance Products when completing their bookings.

31.     From 2019 to the present, Defendants were aware that their retailers (such as Carnival and Norwegian) bundle travel insurance with so-called "non-insurance" benefits such as "assistance services" and cancellation fee waivers.

32.     From 2019 to the present, Defendants were aware that the Products (which include such benefits) were sold for a price exceeding the filed rate for the travel insurance included in the Products.

33.     From 2019 to the present, Defendants were aware that consumers were not given a choice to pay only the filed rate for their travel insurance, without purchasing any other supposed "non-insurance" benefit, when purchasing travel insurance through Defendants' retailer agents

such as Carnival and Norwegian. And, from 2019 to the present, Defendants were aware that consumers could not purchase the so-called "non-insurance" services offered in the Products without also purchasing Defendants' travel insurance.

34.     When consumers are presented an insurance Product offer during the checkout process of one of Defendants' retailer agents (such as Carnival and Norwegian), Defendants' insurance offer is the only insurance option presented to consumers on that checkout page.

35.     An example of a Product offer on Carnival's website is below:

Amended Class Action Complaint



Amended Class Action Complaint

36.    Consumers are presented with the option to "add vacation protection." Clicking the question mark icon next to the option displays the following additional information



37.    There is some additional information about the Products posted elsewhere on the Carnival website. Consumers can view this information if they are able to find it:[1]

Carnival

## WHY TRAVEL PROTECTION?

**Carnival Vacation Protection**

In life, you never really know what may happen. Carnival Vacation Protection can help protect your vacation payment against the unexpected from the time you leave until you return home. Here's how...

| Cancellation Fee Waiver Program - non-insurance services provided by Carnival Cruise Line | |
|---|---|
| Any Reason Cruise Credits | |
| Reimbursement provided in the form of future travel credits if cancellation reason doesn't qualify for a cash refund | 75% of cruise penalty |
| Cancellation Fee Waiver | |
| Reimbursement if you need to cancel your trip for illness, injury, death and more | Cash refund up to total cruise vacation cost |

| Travel Insurance Benefits - underwritten by Nationwide® | |
|---|---|
| Trip Cancellation for independently-booked airfare | |
| Reimbursement of airline tickets you (or your travel agent) may book to adjoin your cruise if you cancel your trip for a covered reason | Cash refund up to total original airfare cost |
| Trip Interruption | |
| Reimbursement if you need to interrupt your trip for a covered reason | Cash refund up to total cruise vacation cost |
| Trip Delay | |
| Reimbursement for catch-up expenses like meals and hotel if you are delayed getting to or from your trip | Up to $500 |
| Accident Medical/Sickness Medical | |
| Reimbursement if you get sick or hurt on your trip | Up to $10,000 each |
| Emergency Evacuation | |
| Coverage if you need emergency medical transportation | Up to $30,000 |
| Repatriation | |
| Coverage provides for shipment of remains in the event of death during the trip | Up to $30,000 |
| Baggage Loss | |
| Reimbursement if your things are lost, stolen or damaged | Up to $1,500 |
| Bag Delay | |
| Reimbursement if bags are delayed 24+ hours and you need to purchase necessary items | Up to $500 |

| Worldwide Emergency Assistance - non-insurance emergency services provided by CareFree Travel Assistance™ |
|---|
| 24/7 Travel Assistance, Medical Assistance, Emergency Services |
| **Within the U.S. and Canada: 1.877.303.5909** |
| **Outside the U.S. and Canada, call collect: 1.516.342.4594** |

This product provides insurance coverage that applies only during the covered trip. You may have coverages from other sources that provide you with similar benefits but may be subject to different restrictions, depending on your other coverage. You may wish to compare the terms of this product with your existing life, health, home, and automobile policies. If you have any questions about your current coverage, call your insurer, insurance agent, or broker.**Important:** This is only a brief description of the program. Refer to your state-specific details as per the information below.

### Carnival Vacation Protection - Product Details

Please note that the benefits listed herein may vary by state. Please refer to your state specific certificate/policy for the full terms and conditions of this plan.

_Please review the Nationwide Privacy Statement by clicking here._

| Valid for departures on or after December 1, 2020: |
|---|

Please note as of June 29, 2021, this product is no longer available for purchase for New York state residents. This product is also not available to residents of Puerto Rico or Quebec.

Please select your state of residence from the drop-down list to download your state-specific product documentation:

[Select State]  [Download]

Travel Insurance is underwritten by Nationwide Mutual Insurance Company and its affiliates, including Nationwide Life Insurance, Columbus, Ohio (NAIC #23787).

Departure dates prior to December 1, 2020 - please click here .

If you need to file a claim, please visit
www.aontravelclaim.com

Do Not Sell My Personal Information

CCL_12012020

---

[1] *See* https://affinitytravelcert.com/document/pdfs/CCL_Landing.html (accessed 9/1/23).

Amended Class Action Complaint

38.    An example of an offer of Defendants' Products on Norwegian's website, captured from a checkout screen after selecting a cruise and stateroom, is below:



39.    Like the plans sold through Carnival, the "BookSafe Travel Protection" plans sold through Norwegian include travel insurance (underwritten by Nationwide) and so-called "Non-Insurance Assistance Services," and may also include a "Cancel For Any Reason Credit Feature."

40.    As indicated above, Defendants identify a single total price for the offered insurance Product prior to purchase.

41.    Within these point-of-sale offers, Defendants do not identify any fee, price, or charge for any assistance service or benefit, or any other "non-insurance" service, separate from or in addition to the premium.

42.    On certain webpages (outside the offers presented to consumers and not generally reviewed prior to purchase), Defendants provide access to additional, state-specific insurance Product information, including standard insurance policy documents. The policy documents for California indicate that assistance and other "non-insurance" services are included in the policy,

Amended Class Action Complaint

but the documents do not disclose that there is a charge, on top of the insurance premium

calculated by Defendants, for those services.

43.    Defendants do not provide sufficient notice to consumers that they are being

charged for "non-insurance" services on top of the calculated premium for the insurance

Products. There is no indication within the actual offer that the price includes a fee for "non-

insurance" services or that any provided disclosure or policy document will reveal the existence

of such a fee. Moreover, there is apparently no method by which consumers can request

Defendants disclose the fee. Defendants know this. Further, Defendants have designed the

purchase and checkout process such that consumers are highly unlikely to discover the existence

or amount of any "assistance fee" or make an inquiry about it.

44.    Below is an excerpt from a confirmation email Plaintiff Williams received from

Defendant's retailer agent Carnival, showing one price for a purchase of Defendants' Product

(referred to as "Vacation Protection"), which, in this instance, was bundled with "non-insurance"

assistance services and a "Cancellation Fee Waiver Program":

### ITEMIZED CHARGES

All Charges are quoted in USD

| **CRUISE CHARGES** | |
| --- | --- |
| Cruise Rate | $90.00 |
| Taxes, Fees & Port Expenses | $298.46 |
| **Total Cruise Charges** | **$388.46** |
| | |
| **OPTIONAL CHARGES** | |
| Vacation Protection | $98.00 |
| **Total Optional Charges** | **$98.00** |
| | |
| **TOTAL CHARGES** | **$486.46** |
| | |
| **PAYMENTS AND CREDITS** | |
| Payments Received | $486.46 |
| **Total Payments and Credits** | **$486.46** |

45.    Likewise, below is an excerpt from a confirmation email Plaintiff Pytel received from Defendant's retailer agent Norwegian, showing one price for a purchase of Defendants' Product (referred to as "Travel Protection").

| BOOKING COMPONENTS PER GUEST IN USD | | | |
|---|---|---|---|
| | **Total** | **Guest 1** | **Guest 2** |
| Guest Fare | 4,304.00 | 2,152.00 | 2,152.00 |
| Gov Tax/Port Exp/Fees | 595.50 | 297.75 | 297.75 |
| Travel Protection | 318.00 | 159.00 | 159.00 |
| Savings | -1,506.40 | -753.20 | -753.20 |
| Bev Srv Charge | 436.00 | 218.00 | 218.00 |
| Din Srv Charge | 23.60 | 11.80 | 11.80 |
| **Gross Total** | 4,170.70 | 2,085.35 | 2,085.35 |

46.    After a consumer purchases Defendants' Products (whether styled as "Vacation Protection" or "Travel Protection"), Defendants do not identify any particular fee, price, or charge for any assistance service or benefit, separate from or in addition to the premium. Additionally, there is no indication in such follow-up e-mails or booking confirmations that alerts consumers to the fact they have purchased two or more distinct products, let alone gives consumers any option to decline assistance services or other "non-insurance" services with their insurance purchase.

47.    Consumers reasonably expect some amount of service and information (about the insurance and potential claims) to be available to them when they purchase insurance and such policy and claims administration costs are supposed to be included in the insurance premiums. To the extent Defendants (including their agents) offer additional assistance benefits that are truly separate from the insurance benefits and may be accurately described as non-insurance benefits, there is little demand in the market for such assistance benefits at the prices Defendants charge and in the form in which they are offered (requiring insureds to call a toll-free number to speak with customer service representatives to obtain various types of information). This is especially true of the non-emergency assistance services Defendant purports to offer. Consumers who

purchase travel accommodations online and through mobile applications can readily find much of the information encompassed within Defendants' assistance services for free, and on demand, using the Internet and widely available applications (such as from Google, Apple, Yelp, and many other service providers), or from more local or personalized sources than Defendants can offer. And there is almost no utility for such non-insurance services on a cruise. Given that reality, and given that Defendants make no mention of any separate charges for such services at the time they present their insurance offers to consumers, consumers have no reason to suspect they are being charged for Defendants' "non-insurance" assistance service at the time they insure their travel purchases.

48.    Defendants' own policy documents indicate that the "assistance services" are either part of, or intertwined with, the insurance (*e.g.*, "Claims Assistance Services," assistance with lost or stolen luggage, and "Emergency return travel arrangements") or have no or *de minimis* value, given the availability of other, more convenient, and free sources of information and the consumer's ultimate responsibility for the costs and expenses associated with any "assistance service." An example of the types of assistance services for which Defendants state they charge their insureds is below:

## Pre-Trip Information – Travel Assistance – Medical Assistance
**Assistance Services listed in this section are not insurance benefits. Costs and expenses associated with the services provided by CareFree Travel Assistance™ are your responsibility, unless stated otherwise.**

Not a care in the world… when you have 24/7 global network to assist you on your travels.

**CareFree Travel Assistance™**
- Inoculation information
- Travel information including visa/passport requirements
- Lost passport/travel documents assistance
- Embassy or Consulate Referral
- Currency exchange rates
- Worldwide public holiday information
- Lost baggage search; stolen luggage replacement assistance
- Emergency cash transfer assistance
- Emergency telephone interpretation assistance
- Urgent message relay to family, friends, or business associates
- Legal referrals/bail bond assistance
- Rental Vehicle Return
- ATM locator
- Up-to-the-minute information on local medical advisories, epidemics, required immunizations and available preventative measures
- Emergency return travel arrangements
- Claims Assistance Services

49.    In any event, most insureds are not aware of the availability and extent of those services, or that they have been charged for them. Consumers generally would not pay for true

non-insurance assistance services if given a fair and informed choice whether to do so. On information and belief, the small percent of insureds who use non-insurance assistance services (if any), and the relatively low costs Defendants incur in providing such services, do not come close to justifying the price of the services and the total revenues Defendants collect for the assistance services.

50.    Moreover, there is no utility at all in *requiring* consumers to purchase Defendants' "non-insurance" assistance service or other non-insurance service in conjunction with Defendants' insurance. Under California law, and under any balancing test of fairness, Defendants must provide consumers a choice as to whether to pay for services in addition to the insurance. If insurers and their agents can bundle any fee they want with insurance premiums, without adequately disclosing the fees to consumers and without giving them a fair and real choice whether to pay those fees, then the extensive, longstanding, and strict regulation of insurance premiums, commissions, and sales in California would become toothless.

51.    If Defendants were genuinely attempting to market an informational assistance service, they would likely offer it for free (using advertisements to cover costs) or they would charge a flat, attractive fee and highlight some competitive edge over the alternative sources of information available to consumers. Instead, Defendants hide their assistance service fee and other fees from consumers at the point of purchase. Such practices imply that Defendants are using the assistance fees to subsidize marketing and operational costs that should properly be included in the insurance premiums, and thus Defendants' characterization of the fees as "non-insurance" assistance fees and other fees is disingenuous, and an attempt to circumvent California's regulation of premiums and of agent compensation.

52.    Regardless of how Defendants' "assistance" and other fees are ultimately characterized—whether as an artifice to collect an unlawful agent's fee (or unauthorized premium) or as genuinely for non-insurance services (that no one has chosen and that few people would pay for if given the choice)—the result is the same: Defendants collect more from consumers than they should. Defendants did not receive approval from the California Department of Insurance to charge these mandatory, hidden fees on top of the premium. If Defendants

followed the laws and regulations, they would not be charging such fees. And if Defendants disclosed the fees to consumers prior to purchase, consumers would not pay for the fees. Defendants are continuing to charge and collect sums that they are not allowed to collect by law, and which are more than consumers would pay if they understood Defendants' practices.

53.    In sum, Defendants' practice of charging consumers for supposed "assistance" and other non-insurance services that add little apparent value to the Product, in connection with trip/travel/vacation insurance, is deceptive, unfair, and unlawful.

## II.    Plaintiffs' Experiences

### Isabel Williams

54.    On or about January 17, 2022, Plaintiff Williams visited the website of Carnival to purchase accommodations for a cruise. Plaintiff Williams purchased cruise accommodations on that occasion. Additionally, Defendants, through their retail agent Carnival, offered Plaintiff Williams the option to purchase Defendants' Vacation Protection product to insure her cruise accommodations purchases. Plaintiff Williams did so, paying $245.00 ($147.00 + $98.00) for the Product.

55.    On or about September 21, 2022, Plaintiff Williams again visited the website of Carnival to purchase accommodations on board a cruise. Plaintiff Williams purchased cruise accommodations on that occasion. Again, Defendants, through their retailer-agent Carnival, offered Plaintiff Williams the option to purchase Defendants' Vacation Protection product to insure her cruise accommodations purchase. Plaintiff Williams did so, paying $158.00 for the Product.

56.    During the online checkout process for each of those purchases, Plaintiff Williams was presented with an offer from Defendants to purchase insurance for the cruises. The offer was presented in a manner substantially similar to the example set forth in paragraph 35 herein. There was a box and/or section on the checkout page presenting her with an option to insure her purchase.

57.    Defendants designed, controlled, approved, and/or have access to the exact offer text presented to Plaintiff Williams on each of those occasions.

58.     Defendants' insurance offer was the only insurance option presented to Plaintiff Williams at those times. A single price was stated as the price of the "protection." There was no indication that any other fees other than an insurance premium was included in that price.

59.     Unbeknownst to Plaintiff Williams, at the time she accepted the offers of insurance, the total amounts she was charged for the insurance included both an insurance premium and a mandatory additional amount that Defendants contend was for assistance and other "non-insurance" services but that was, in effect, an unlawful agent's fee or unauthorized premium. At a minimum, it was an unfair charge, and Defendants had no justification for bundling it with the premiums in the way they did.

60.     Neither the insurance offers nor any other portion of the checkout pages disclosed (a) a specific breakdown of the components of the total price; (b) the specific amount Defendants categorize as the insurance premium; (c) that she was being charged particular amounts (on top of the insurance premium) supposedly for assistance and/or "non-insurance" services and benefits; (d) that the assistance charge was not determined solely by the cost of and demand for non-insurance assistance services, but that it was a pretext to increase Defendants' profits and subsidize the marketing and sale of travel insurance; (e) that the bundling of assistance services fees with insurance premiums had not been approved and/or was not in compliance with applicable laws and regulations; (f) that she was being charged an unlawful and unfair agent's fee; (g) that she was being charged an unlawful and unfair insurance premium; and/or (h) adequate material facts about the nature of such "assistance" services.

61.     When accepting each of Defendants' insurance offers on the occasions referenced above, and on any other occasions that Plaintiff Williams purchased Defendants' Vacation Protection product, Plaintiff Williams was not aware of the existence of any assistance or other "non-insurance" service fee in addition to the insurance premium and was not aware of any of the foregoing facts at the time she purchased the insurance. As a result of Defendants' material misrepresentations and omissions, and Defendants' unlawful and unfair practices, Plaintiff Williams agreed to pay Defendants to insure her purchases and believed, each time, that the amount she paid Defendants was for the insurance only and that the amount charged was

determined by a regulated, lawful process. Plaintiff Williams was seeking only lawful and proper insurance—not separate non-insurance informational "assistance" services. Plaintiff Williams would not have paid the price charged for such services by Defendants if given the choice. She was not aware of, and did not agree to pay for, any additional or unlawful agent's fee or any additional "assistance" or other service that Defendants purport to offer to their insureds.

62.    Following and on the same day as each of the aforementioned purchases, Plaintiff Williams received a confirmation email that included information concerning her purchase of Defendants' Vacation Protection product. Those emails did not identify the cost of any purported "non-insurance" assistance services or benefits. Further, any policy information available to Plaintiff Williams, either before or after her purchases, did not contain any such information.

63.    Plaintiff Williams would have paid less than she did if Defendants had complied with California law and charged her only an approved premium, rather than unfairly, unlawfully, and deceptively including undisclosed additional fee or fees in the cost of the insurance.

64.    Plaintiff Williams would have declined the fee or fees for Defendants' supposed "assistance" services if Defendants had fully and fairly disclosed: (a) that Defendants were charging an unlawful agent's fee and/or unlawful amount of premium; or (b) the existence and amount of the fee/charge for supposed "assistance" services and basic, material, and truthful information about the supposed "assistance" services, which would have allowed her to understand that she was being charged for something she did not want to pay for, and that the fee is a pretext for increasing Defendants' profits. Plaintiff Williams likely would not have purchased insurance from Defendants if she had doubts about their integrity and reliability, and she would have had such doubts if Defendants had fully and fairly disclosed the material information described in this Complaint.

**Jeffrey Pytel**

65.    On or about June 18, 2022, Plaintiff Pytel visited the website of Norwegian to purchase accommodations for a cruise for him and his family. Plaintiff Pytel purchased cruise accommodations on that occasion. Additionally, Defendants, through their retailer agent Norwegian, offered Plaintiff Pytel the option to purchase a Product to insure his cruise

accommodations purchases. Plaintiff Pytel did so, paying a total of $552.00 for himself and three family members ($159.00, $65.00, $209, and $119).

66.     On or about March 16, 2023, Plaintiff Pytel visited the website of Norwegian to purchase accommodations on a Norwegian cruise for him and his family. Plaintiff Pytel purchased cruise accommodations on that occasion. Additionally, Defendants, through their retailer agent Norwegian, offered Plaintiff Pytel the option to purchase a Product to insure his cruise accommodations purchases. Plaintiff Pytel did so, paying at least $698.00.

67.     On or about April 25, 2024, Plaintiff Pytel visited the website of Norwegian to purchase accommodations for a cruise for him and his family. Plaintiff Pytel purchased cruise accommodations on that occasion. Again, Defendants, through their retailer agent Norwegian, offered Plaintiff Pytel the option to purchase a Product to insure his cruise accommodations purchase. Plaintiff Pytel did so, paying a total of $636.00 for himself and three family members ($159.00 each).

68.     During the online checkout process for each of those purchases, Plaintiff Pytel was presented with an offer to purchase Defendants' insurance for the cruises. The offer was presented in a manner substantially similar to the example set forth in paragraph 38 herein.

69.     Defendants designed, controlled, approved, and/or have access to the exact offer text presented to Plaintiff Pytel on each of those occasions.

70.     Defendants' insurance was the only insurance option presented to Plaintiff Pytel during the checkout process at those times. A single price was stated as the price of the "protection." There was no indication that any other fees other than an insurance premium was included in that price.

71.     Unbeknownst to Plaintiff Pytel at the time he accepted the offers of insurance, the total amounts he was charged for the insurance included both an insurance premium and a mandatory additional amount that Defendants contend was for assistance and other "non-insurance" services but that was, in effect, an unlawful agent's fee or unauthorized premium. At a minimum, it was an unfair charge, and Defendants have no justification for bundling it with the premiums in the way they did.

72.     Neither the insurance offers nor any other portion of the checkout pages disclosed (a) a specific breakdown of the components of the total price; (b) the specific amount Defendants categorize as the insurance premium; (c) that Plaintiff Pytel was being charged particular amounts (on top of the insurance premium), supposedly for assistance and/or "non-insurance" services and benefits; (d) that the assistance charge was not determined solely by the cost of and demand for non-insurance assistance services, but that it was a pretext to increase Defendants' profits and subsidize the marketing and sale of travel insurance; (e) that the bundling of assistance services fees with insurance premiums had not been approved and/or was not in compliance with applicable laws and regulations; (f) that Plaintiff Pytel was being charged an unlawful and unfair agent's fee; (g) that Plaintiff Pytel was being charged an unlawful and unfair insurance premium; and/or (h) adequate material facts about the nature of such "assistance" services.

73.     When accepting each of Defendants' insurance offers on the occasions referenced above, and on any other occasions that Plaintiff Pytel purchased Defendants' Products, Plaintiff Pytel was not aware of the existence of any assistance or other "non-insurance" service fee in addition to the insurance premium and was not aware of any of the foregoing facts at the time he purchased the insurance. As a result of Defendants' material misrepresentations and omissions, and Defendants' unlawful and unfair practices, Plaintiff Pytel agreed to pay Defendants to insure his purchases and believed, each time, that the amount he paid Defendants was for the insurance only and that the amount charged was determined by a regulated, lawful process. Plaintiff Pytel was seeking only lawful and proper insurance—not separate non-insurance informational "assistance" services. Plaintiff Pytel would not have paid the price charged for such services by Defendants if given the choice. He was not aware of, and did not agree to pay for, any additional or unlawful agent's fee or any additional "assistance" or other service that Defendants purport to offer to their insureds.

74.     Following and on or about the same day as each of the purchases described herein, Plaintiff Pytel received a confirmation email that included information concerning his purchase of Defendants' Products. Those emails did not identify the cost of any purported "non-insurance"

Amended Class Action Complaint

assistance services or benefits. Further, any policy information available to Plaintiff Pytel, either before or after his purchases, did not contain any such information.

75.    Plaintiff Pytel would have paid less than he did if Defendants had complied with California law and charged him only an approved premium, rather than unfairly, unlawfully, and deceptively including undisclosed additional fee or fees in the cost of the insurance.

76.    Plaintiff Pytel would have declined the fee or fees for Defendants' supposed "assistance" services if Defendants had fully and fairly disclosed: (a) that Defendants were charging an unlawful agent's fee and/or unlawful amount of premium; or (b) the existence and amount of the fee/charge for supposed "assistance" services and basic, material, and truthful information about the supposed "assistance" services, which would have allowed him to understand that he was being charged for something he did not want to pay for, and that the fee is a pretext for increasing Defendants' profits. Plaintiff Pytel likely would not have purchased insurance from Defendants if he had doubts about their integrity and reliability, and he would have had such doubts if Defendants had fully and fairly disclosed the material information described in this Complaint.

## III.    Because Defendants Intend to Continue Their Deceptive and Unfair Conduct, a Public Injunction Is Needed to Protect the Public from Future Harm.

77.    To protect the general public from the threat of future injury, Plaintiffs seek a public injunction to prohibit Defendants from continuing the deceptive, unfair, and unlawful practices alleged herein.

78.    To stop Defendants' deceptive, unfair, and unlawful conduct, Defendants should be required to charge only the approved, filed rate for the travel insurance policies they sell, and to plainly and truthfully disclose all premiums, fees, and charges to consumers prior to the sale of insurance, and Defendants should be prohibited from charging supposedly separate fees for "assistance" services as a mandatory fee in connection with the sale of insurance policies. Defendants should be enjoined from charging fees and/or premiums that have not been approved for sale in California.

79.    Plaintiffs will purchase travel products and services in the future and will be presented with the option to insure those purchases through Defendants. Plaintiffs desire to insure their travel-related purchases but, absent the injunctive relief sought, will not be able to determine whether they will be charged a hidden fee or an unlawful mandatory agent's fee in addition to the insurance premium. Under California law, Plaintiffs have a right to know the insurance premiums and the additional fees for any putative insurance transaction. Defendants are infringing those rights. Plaintiffs are unable, and will continue to be unable, to rely on Defendants' representations regarding the price of their insurance products, unless the injunctive relief requested in this Complaint is awarded. That present and continuing uncertainty is an ongoing harm to them as consumers and infringes the rights protected by the UCL, FAL, and insurance laws and regulations. Even if Plaintiffs were able to determine that Defendants will impose an unlawful agent's fee in addition to charging a premium, absent an injunction prohibiting Defendants from doing so, Plaintiffs will be forced to either forgo the insurance they desire (and the only insurance available in that checkout process), or else pay an unlawful fee.

80.    Accordingly, there is a risk that Plaintiffs, and those similarly situated, will be harmed by Defendants in the same manner, and will be deprived of the opportunity to purchase lawfully and fairly priced insurance, which would be available on travel websites and other places travel products and services are sold, but for Defendants' unlawful, deceptive, and unfair practices.

## CLASS ALLEGATIONS

81.    Plaintiffs bring this class action lawsuit on behalf of the following proposed class ("Class") of similarly situated persons, pursuant to Rule 23 of the Federal Rules of Civil Procedure, defined as follows:

> All natural persons who, using a California address, purchased travel insurance from Defendants at any point from December 8, 2019, until the present, and who were charged a fee for the supposed assistance services or benefits included with Defendants' travel insurance contracts on top of the applicable insurance premium rate Defendants were authorized to charge for their travel insurance.

82.    The following persons and entities are excluded from the Class: Defendants and their officers, directors, employees, subsidiaries, and affiliates; all judges assigned to this case and any members of their immediate families.

83.    Plaintiffs reserve the right to propose additional or alternative classes or subclasses, or to narrow the above class definition. This reservation includes, but is not limited to, classes or subclasses involving consumers in multiple states or involving particular issues.

84.    This action has been brought, and may properly be maintained, as a class action against Defendants because there is a well-defined community of interest in the litigation and the proposed class is easily ascertainable.

85.    Numerosity: Plaintiffs do not know the exact size of the Class, but estimates it is composed of more than 500 persons. At a minimum, there are tens of thousands of class members in the Class but very likely many more. The persons in the Class are so numerous that the joinder of all such persons is impracticable, and the disposition of their claims in a class action rather than in individual actions will benefit the parties and the courts.

86.    Common Questions Predominate: This action involves common questions of law and fact to the potential Class because each class member's claim derives from the same deceptive, unlawful and/or unfair statements, omissions, and practices. The common questions of law and fact predominate over individual questions, as proof of a common or single set of facts will establish the right of each member of the Class to recover. The questions of law and fact common to the Class include, but are not limited to, the following:

a.    whether the prices Defendants actually charged for their Products were the approved "premiums" for Defendants' travel insurance Products under California law;

b.    whether the prices or "premiums" Defendants actually charged for their Products exceeded the premium rates approved for those Products in California;

c.    whether the "assistance fees," or other charges in excess of the applicable filed premium rates, included in the sale of the Products were unauthorized insurance premiums and/or unlawful agent fees;

d.  whether reasonable consumers interpreted the price in Defendants' insurance offers as the insurance premium or price and were unaware of any additional fee for assistance and other services;

e.  whether Defendants have engaged, and continue to engage, in unfair practices by circumventing regulatory scrutiny, by charging unlawful and excessive agent fees and/or premium charges, and/or by requiring all consumers to pay assistance fees without a fair option to decline such fees, thus charging consumers more than they are legally allowed to charge;

f.  whether at least some of the "assistance services" included in the Products are part of the insurance or are insurance-related such that they are subject to the filed, approved rate for the travel insurance and Defendants cannot charge extra for them;

g.  whether Defendants knew or should have known that reasonable consumers did not value the truly non-insurance assistance services (if any) included in the Products;

h.  whether Defendants violated Section 1754 of the California Insurance Code;

i.  whether Defendants' conduct is unlawful, unfair, or fraudulent in violation of the Unfair Competition Law, California Business and Professions Code § 17200, *et seq*.

j.  whether Defendants have engaged, and continue to engage, in unfair or fraudulent practices by misrepresenting in insurance offers that the prices charged were solely for the insurance premium, and by failing to disclose that the amounts charged to Plaintiff and class members included mandatory assistance fees;

k.  whether Defendants' conduct constitutes untrue or misleading statements within the meaning of California Business and Professions Code § 17500, *et seq*.;

l.  whether Defendants engaged in the alleged conduct knowingly, recklessly, or negligently;

m.  the amount of profits and revenues earned by Defendants and/or the amount of monies or other obligations lost by class members as a result of the misconduct alleged herein; and

n.  whether Class Members are entitled to restitution, injunctive and other equitable relief and, if so, what is the nature (and amount) of such relief.

87.  Typicality: Plaintiffs' claims are typical of the claims of other members of the Class because, among other things, all such claims arise out of the same wrongful course of conduct in which the Defendants engaged in violation of law as described herein. Further, the damages of each Class members were caused directly by Defendants' wrongful conduct in violation of the law as alleged herein. Plaintiffs and Class members have suffered injury in fact as a result of Defendants' misleading, deceptive, unfair, and unlawful conduct. Plaintiffs and Class members would not have paid the assistance fees but for Defendants' misconduct.

88.  Adequacy of Representation: Plaintiffs will fairly and adequately protect the interests of all Class members because it is in their best interests to prosecute the claims alleged herein to obtain full compensation due to her for the unfair and illegal conduct of which they complain. Plaintiffs also have no interests that are in conflict with, or antagonistic to, the interests of Class Members. Plaintiffs have retained highly competent and experienced class action attorneys to represent their interests and that of the Class. By prevailing on their own claims, Plaintiffs will establish Defendants' liability to all Class members. Plaintiffs and their counsel have the necessary financial resources to adequately and vigorously litigate this class action, and Plaintiffs and counsel are aware of their fiduciary responsibilities to the Class members and are determined to diligently discharge those duties by vigorously seeking the maximum possible recovery for Class members.

89.  Superiority: There is no plain, speedy, or adequate remedy other than by maintenance of this class action. The prosecution of individual remedies by members of the Class will tend to establish inconsistent standards of conduct for Defendants and result in the impairment of Class members' rights and the disposition of their interests through actions to which they were not parties. Class action treatment will permit a large number of similarly

situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions would engender. Furthermore, as the damages suffered by each individual Class member may be relatively small, the expenses and burden of individual litigation would make it difficult or impossible for individual Class members to redress the wrongs done to them, while an important public interest will be served by addressing the matter as a class action.

90.     Plaintiffs are unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

## CAUSES OF ACTION

## PLAINTIFFS' FIRST CAUSE OF ACTION

### (Unlawful, unfair, and fraudulent trade practices violation of Business and Professions Code § 17200, *et seq.* ("UCL"))

91.     Plaintiffs reallege and incorporate by reference the paragraphs of this Amended Class Action Complaint as set forth herein.

92.     Within at least four (4) years preceding the filing of this lawsuit, and at all times mentioned herein, Defendants have engaged, and continue to engage, in unlawful, unfair, and fraudulent trade practices in California by engaging in the unlawful, unfair, and fraudulent business practices outlined in this Complaint.

93.     Defendants have engaged, and continue to engage, in unlawful practices by, without limitation, violating the following state laws: (i) section 17500, *et seq.* of the California Business and Professions Code (the "FAL"), as described herein; and/or (ii) the California Insurance Code and regulations, including without limitation Cal. Ins. Code § 332 (requiring disclosure of all facts material to the insurance contract), Cal. Ins. Code § 381(f) (requiring Defendants' Products to include a "statement of the premium"), Cal. Ins. Code § 790.02 (prohibiting unfair and deceptive practices in the business of insurance), Cal. Ins. Code § 1754 (requiring Defendants to ensure that travel retailers comply with insurance laws, rules, and regulations, and disclose to prospective insureds that "purchasing travel insurance is not required in order to purchase any other product or service offered by the travel retailer"), Cal. Ins. Code §§ 1861.01(c) and 1861.05 and associated regulations and case law (insurance rates must be approved by the CDI prior to

their use); and Cal. Code Regs. tit. 10, §§ 2189.3 and 2189.5 and applicable case law (prohibiting appointed agents from charging fees). To the extent Defendants charge consumers for a non-insurance service without properly disclosing that practice, Defendants violate the FAL and Cal. Ins. Code § 332 because they fail to disclose material facts regarding the price of the insurance and mislead consumers as a result. To the extent the supposed "assistance" and other fees for purportedly non-insurance services are in fact mandatory agent fees (or additional premium) and are determined by factors similar to those typically used to determine agent fees and premiums, then Defendants violate Cal. Ins. Code §§ 1861.01(c) and 1861.05 (because they did not get the required prior approval for those fees) and/or Cal. Code Regs. tit. 10, §§ 2189.3 and 2189.5 (which authorize only brokers, not agents, to collect fees, and only pursuant to strict disclosure requirements).

94.    Defendants have engaged, and continue to engage, in unfair practices through the practices described herein, which undermine and offend the public policies behind Proposition 103, including: to protect consumers from arbitrary insurance rates and practices and to ensure that insurance is fair, available, and affordable for all Californians. Moreover, the financial injury to consumers of being required to pay an additional fee, on top of the insurance premium, supposedly (but not really) for a service they do not use, are not aware of, and which is priced far above its actual value, outweighs any potential benefit of requiring consumers to pay such an arbitrary fee on top of a highly regulated insurance price—particularly when Defendants could easily make their assistance services optional.

95.    Defendants have engaged, and continue to engage, in deceptive practices by, without limitation failing to disclose that the amounts charged to Plaintiffs and Class members for the Products included mandatory "non-insurance" fees and (if Defendants' characterization of the fees as "non-insurance" were correct) misleading consumers to believe that the prices charged for the Products were solely for the insurance premium, when they also included a hidden fee for a non-insurance service.

96.    Defendants caused injury to Plaintiffs and to all Class members. Had Defendants not violated California law and/or public policy as described herein, they would have charged

only the authorized insurance premiums for the Products and Plaintiffs, and those similarly situated, would not have paid the "assistance fees" or other unfair charges in excess of the applicable filed premium rates for the Products. If Plaintiffs had been adequately informed and not deceived by Defendants, they would have declined to purchase Defendants' Products or paid less for them.

97.     Defendants' acts and omissions are likely to deceive the general public.

98.     Defendants engaged in these unfair, deceptive, and unlawful practices to increase their profits. Accordingly, Defendants have engaged in unlawful trade practices, as defined and prohibited by section 17200, *et seq*. of the California Business and Professions Code.

99.     The aforementioned practices, which Defendants have used to their significant financial gain, also constitute unlawful competition and provide an unlawful advantage over Defendants' competitors as well as injury to the general public.

100.   As a direct and proximate result of such actions, Plaintiffs and the other Class members have suffered and continue to suffer injury in fact and have lost money and/or property as a result of such deceptive and/or unlawful trade practices and unfair competition in an amount which will be proven at trial, but which is in excess of the jurisdictional minimum of this Court. Among other things, Plaintiffs and Class members lost the amounts they paid for the supposed assistance services and other amounts unfairly charged in excess of the applicable filed premium rates for the Products.

101.   As a direct and proximate result of such actions, Defendants have enjoyed, and continue to enjoy, significant financial gain in an amount which will be proven at trial, but which is in excess of the jurisdictional minimum of this Court.

102.   Plaintiffs seek, on behalf of themselves and those similarly situated, equitable relief, including restitution for the amounts Plaintiffs and the Class paid in excess of the legally capped insurance premiums for the Products. Plaintiffs and the Class lack an adequate remedy at law to obtain such relief with respect to the "unfairness" prong of this UCL cause of action, because there is no cause of action at law for alleged unfair conduct. Plaintiffs and the Class similarly lack

Amended Class Action Complaint

an adequate remedy at law to obtain such relief with respect to the "unlawfulness" prong of this

UCL cause of action because there is no cause of action at law for the alleged illegal conduct.

103.   Plaintiffs also seek equitable relief, including restitution, with respect to the

deceptive prong of their UCL claim. Plaintiffs and the Class lack an adequate remedy of law for

this aspect of the UCL claim because claims at law require additional elements, such as reliance

and materiality beyond the objective reasonable consumer standard applied under the UCL. The

UCL does not require individualized proof of deception or injury by absent class members. *See,*

*e.g., Stearns v Ticketmaster*, 655 F.3d 1013, 1020, 1023–25 (distinguishing, for purposes of

CLRA claim, among class members for whom website representations may have been materially

deficient, but requiring certification of UCL claim for entire class). In addition, Plaintiffs and the

Class may be unable to obtain such relief under other causes of action and will lack an adequate

remedy at law, if Plaintiffs are unable to demonstrate the requisite *mens rea* (intent, reckless,

and/or negligence), because the UCL imposes no such *mens rea* requirement and liability exists

even if Defendants acted in good faith.

104.   Plaintiffs seek, on behalf of themselves and those similarly situated, a declaration

that the above-described trade practices are fraudulent, unfair, and/or unlawful.

105.   Plaintiffs seek, on behalf of themselves and those similarly situated, an injunction to

prohibit Defendants from continuing to engage in the unfair, unlawful, and/or deceptive trade

practices complained of herein. Such misconduct by Defendants, unless and until enjoined and

restrained by order of this Court, will continue to cause injury in fact to the general public and the

loss of money and property in that Defendants will continue to violate the laws of California,

unless specifically ordered to comply with the same. This expectation of future violations will

require current and future consumers to repeatedly and continuously seek legal redress in order to

recover monies paid to Defendants to which they were not entitled. Plaintiffs, those similarly

situated, and the general public, have no other adequate remedy at law to ensure future

compliance with the laws alleged to have been violated herein.

**PLAINTIFFS' SECOND CAUSE OF ACTION**
**(False Advertising, Business and Professions Code § 17500, *et seq.* ("FAL"))**

106.   Plaintiffs reallege and incorporate by reference the paragraphs of this Amended Class Action Complaint as set forth herein.

107.   Beginning at an exact date unknown to Plaintiffs, but continually within three (3) years preceding the filing of the Class Action Complaint, Defendants (including through their agents) made untrue, false, deceptive and/or misleading statements in connection with the advertising, marketing, and sale of their Products on third party websites.

108.   Defendants and their agents made representations and statements (by omission and commission) that led reasonable customers to believe that they were agreeing to pay approved and lawful premiums for trip/travel insurance policies, without hidden, unapproved fees being included within the supposed premium for the policies. Defendants knew or should have known that consumers did not demand or value the supposed "assistance" and other non-insurance services they offered, that consumers would not pay for such services, and that consumers did not know they were being charged for such services when they purchased the Products. Nevertheless, Defendants continued to advertise their insurance policies as part of a scheme with the intent not to sell the insurance as advertised and to mislead consumers regarding the nature and extent of the services they were obtaining from Defendants, and regarding the prices of those insurance and "non-insurance" services. Defendants knew or should have known that they misled consumers regarding: the nature of the prices paid for the insurance, the existence of additional "non-insurance" fees, and the extent of Defendants' assistance and other services.

109.   Defendants created a situation where they and their agents could charge for a service while hiding its existence to consumers they had charged, thus making it even more unlikely that insureds would use the service for which they had been charged (and thus making the performance of the supposed assistance and other services illusory).

110.   Plaintiffs and the class members relied to their detriment on Defendants' false, misleading and deceptive advertising and marketing practices, including each of the misrepresentations and omissions set forth above. Had Plaintiffs, and those similarly situated, been adequately informed and not misled by Defendants and their agents, they would have acted

differently by, without limitation, declining the fee for assistance services and, if necessary, declining the entire insurance transaction.

111.   Defendants' acts and omissions are likely to deceive the general public.

112.   Defendants and their agents engaged in these false, misleading and deceptive advertising and marketing practices to increase their profits. Accordingly, Defendants have engaged in false advertising, as defined and prohibited by section 17500, *et seq*. of the California Business and Professions Code.

113.   The aforementioned practices, which Defendants used, and continue to use, to their significant financial gain, also constitute unlawful competition and provide an unlawful advantage over Defendants' competitors as well as injury to the general public.

114.   As a direct and proximate result of such actions, Plaintiffs and Class members have suffered, and continue to suffer, injury in fact and have lost money and/or property as a result of such false, deceptive, and misleading advertising in an amount which will be proven at trial, but which is in excess of the jurisdictional minimum of this Court. In particular, Plaintiffs and Class members lost money or property as a result of Defendants' violations because they would not have paid for Defendants' supposed assistance fees, or other unfair charges in excess of the applicable filed premium rates for the Products, absent Defendants' misleading, unfair, and unlawful conduct.

115.   Plaintiffs seek equitable relief, including restitution, with respect to their FAL claim. Plaintiffs and the Class lack an adequate remedy of law for the FAL claim because claims at law require additional elements, such as reliance and materiality beyond the objective reasonable consumer standard applied under the FAL. The FAL does not require individualized proof of deception or injury by absent class members. *See, e.g., Ries v. Ariz. Bevs. USA LLC*, 287 F.R.D. 523, 537 (N.D. Cal. 2012) ("restitutionary relief under the UCL and FAL 'is available without individualized proof of deception, reliance, and injury.'"). In addition, Plaintiffs and the Class may be unable to obtain such relief under other causes of action and will lack an adequate remedy at law, if Plaintiffs are unable to demonstrate the requisite *mens rea* (intent, reckless,

and/or negligence), because the FAL imposes no such *mens rea* requirement and liability exists even if Defendants acted in good faith.

2.      Plaintiffs seek, on behalf of themselves and the Class members, a declaration that the above-described practices constitute false, misleading and deceptive advertising.

3.      Plaintiffs seek, on behalf of themselves and the Class members, an injunction to prohibit Defendants from continuing to engage in the false, misleading, and deceptive advertising and marketing practices complained of herein. Such misconduct by Defendants, unless and until enjoined and restrained by order of this Court, will continue to cause injury in fact to the general public and the loss of money and property in that Defendants will continue to violate the laws of California, unless specifically ordered to comply with the same. This expectation of future violations will require current and future consumers to repeatedly and continuously seek legal redress in order to recover monies paid to Defendants to which they are not entitled. Plaintiffs, those similarly situated, and/or other California consumers have no adequate remedy at law to ensure future compliance with the California Business and Professions Code alleged to have been violated herein.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves, those similarly situated, Class members, and the general public, respectfully request that the Court enter judgment against Defendants as follows:

A.  Certification of the proposed Class, including appointment of Plaintiffs' counsel as class counsel and Plaintiffs as the class representatives;

B.  An order temporarily and permanently enjoining Defendants from continuing the un-lawful, deceptive, fraudulent, and unfair business practices alleged in this Amended Class Action Complaint;

C.  An award of restitution in favor of Plaintiffs and Class members in an amount to be determined at trial;

D.  An order requiring Defendants to pay both pre- and post-judgment interest on any amounts awarded;

E.  For reasonable attorney's fees and the costs of suit incurred; and

F.  For such further relief as this Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiffs hereby demands a trial by jury.


Dated:    December 11, 2024                **GUTRIDE SAFIER LLP**

*/s/ Patrick J. Branson /s/*
Seth A. Safier, Esq.
  seth@gutridesafier.com
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 639-9090
Facsimile:  (415) 449-6469

Stephen M. Raab (*pro hac vice*)
  stephen@gutridesafier.com
Patrick J. Branson (*pro hac vice*)
  patrick@gutridesafier.com
305 Broadway, 7th Floor
New York, NY 10007
Telephone: (415) 639-9090
Facsimile: (415) 449-6469

*Attorneys for Plaintiffs*